12664

SCHOOL DIST. NO. 60 OF WILLIAMSBURG COUNTY *ET AL.,* v. MONTGOMERY *ET AL.*

(148 S. E., 218)

392

*Messrs. Hinds & Meadors,* for appellants,

*Mr. Philip H. Stoll,* for respondents,

May 14, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This is an appeal on the part of the plaintiffs from an order of his Honor, J. Henry Johnson, Circuit Judge, dismissing a complaint which sought to prevent the creation of a certain proposed school district in Williamsburg County.

At the time of the beginning of the proceedings under review herein, there existed in Williamsburg County certain school districts known as Nos. 21, 39, 41, and 60. District No. 41 was commonly known as Trio school district. On petition therefor the county board of education sought to create a proposed new school district to be known as Trio school district No. 41, to be composed of all of the territory of school district No. 41, all the territory of school district No. 60, a part of school district No. 21, and a part of school district No. 39. A petition for the creation of the proposed new and enlarged school district, signed by more than one-third of the qualified· electors of the territory embraced in the proposed new school district, was filed with the county board of education. The petition was not signed, however, by as many as one-third of the qualified electors of school district No. 60. A large number, apparently more than two-thirds of the qualified electors of school district No. 60, objected to· the formation of the proposed new school district.

After the attempted formation of the proposed new school district No. 41, an election was held for the purpose of issuing bonds for the building of a schoolhouse, which election resulted favorably. The plaintiffs herein, who are the appellants, seek by injunction to prevent the formation of the

proposed new school district No. 41, and the issuance of the bonds voted, but the Circuit Judge decided against them.

The appeal involves three questions, correctly stated, as we see them, by the respondents. Without passing upon each of the several exceptions, we will consider the questions raised.

The first question relates to the power of the county board of education to legally create a new school district under the procedure followed in this instance. The respondents contend that the action of the county board of education was the simple creation, under the law, of a new school district, and that the board had full power, under the statutes, to proceed as it did. The appellants assert that the proceeding was one of "consolidation" of school districts, and that the county board of education could not, in the manner pursued by it, consolidate school district No. 60 with school district No. 41 and parts of districts Nos. 21 and 39.

By Section 2599 of Volume 3 of the Code of 1922, enacted originally in 1896, following the adoption of the Constitution of 1895, county boards of education were directed to "divide their counties into convenient school districts, as compact in form as practicable, having regard to natural boundaries, and not to exceed forty-nine nor be less than nine square miles in area," with the power to such boards to "alter the lines thereof, and create additional school districts from time to time as the interest of the schools may, in their judgment, demand," but it was provided in the said Section "that no new school district shall be erected by the said County Board of Education, except upon the petition of at least one-third of the qualified electors embraced within the limits of such proposed school district." The respondents contend that the county board of education proceeded under the law above quoted, and that the proceed-

ings of the board were in harmony with the quoted pro-
visions.

The Section referred to contains, however, the further
provision: "That no school district shall be consolidated ex-
cept upon a petition of at least one-third of the qualified
voters of the school district proposed to be consolidated."
The appellants assert that in this case the practical result was
to consolidate school district No. 60 with school district
No. 41, and, since one-third of the qualified voters of school
district No. 60 did not petition for the consolidation, that
the county board of education exceeded its authority.

The provision last quoted as to the consolidation of school
districts has been construed by this Court to mean that the
consolidation of two districts cannot be made, except on pe-
tition of at least one-third of the qualified voters of each of
the school districts proposed to be consolidated. *Goggans v.
State Board of Education,* 133 S. C., 183, 130 S. E., 645.

The effect of the action of the county board of education
is absolutely to destroy, as a school district, the old school
district No. 60. The territory embraced in that district is
consolidated with the territory embraced in the old school
district No. 41. Clearly, under the school law, to which we
have referred, the county board of education could not have
joined or consolidated these school districts in one district
without the consent of one-third of the qualified voters of
both school district No. 41 and school district No. 60. The
board did not have the consent of the required number of
the qualified voters of school district No. 60.

When the board took parts of school districts Nos. 21
and 39 and added them to school districts Nos. 41 and 60, in
an effort to create an entirely new school district, it at-
tempted to do indirectly what the law said it could not di-
rectly do. If the county board of education has the power
to do what it has attempted to do in this case, it could "con-

solidate" almost any school district with one or more other school districts by adding on a square foot or so of territory from some third or fourth school district, as long as it regarded the constitutional and statutory provisions as to area. We do not think it was the intention of the Legislature to allow county boards of education to absolutely destroy the existence of a school district legally created, without the consent of at least one-third of the qualified electors of that district, in the manner sought to be done in this proceeding. The action of the county board of education we, accordingly, hold to have been illegal.

The respondents further contend, however, that the Court of Common Pleas of Williamsburg County could not give the petitioners any relief, since they were required, under the law, to appeal from the county board of education to the state board of education. They base this contention upon the provisions of Section 2597 of Volume 3 of the Code of 1922. In that Section the county board of education is made "a tribunal for determining any matter of local controversy in reference to the construction or administration of the school laws," and any "parties" to such "local controversy" are given the right to appeal to the state board of education from the decision of the county board of education.

The respondents rely mainly upon the recent case of *State ex rel. Windham v. Dick,* 134 S. C., 46, 131 S. E., 772. In that case, Mr. Justice Stabler, speaking for this Court, said this: "There can be no doubt that it was the purpose of the Legislature in the enactment of the law above quoted to provide an appropriate remedy, with suitable tribunals and methods of procedure, 'for determining any matter of local controversy in reference to the construction or administration of the school laws.' The present matter, the disputed election of a teacher by the Trustees, comes within the provision of the law as being such a 'mat-

ter of local controversy' to be determined, if possible, by the proper school tribunals provided for by statute."

We do not think, however, that this case is controlled by the *Windham case*. The situation here is altogether different. The matter of completely dissolving school district No. 60 is not one of mere "local controversy." The rights of taxpayers of school district No. 60 are involved. Perhaps creditors, especially bondholders, have claims against that school district. This class of persons might have claims against a school district.

Nor is this case like that of *McCollum v. Crosby*, 114 S. C., 169, 103 S. E., 514, also cited by the respondents, where it was held that the location of a school building is an administrative matter within the discretion and judgment of the school trustees, subject to the appellate and supervisory power of the county and state boards of education.

As indicated, the county board of education sought here to destroy the very corporate existence of school district No. 60. That is much more than a matter of "local controversy," and any interested person who might suffer injury thereby had the right, in our opinion, to seek relief from such threatened injury in our Courts.

The third position of the respondents is that the appellants having failed to appeal from any action of the trustees to the county board of education, and having failed also to appeal from any action of the county board of education to the state board of education, are now estopped from bringing their action for injunction. It is pointed out that the appellants knew that a petition was pending before the county board of education for the creation of the proposed new school district; that some of the signers of the petition resided in school district No. 60, and some of the appellants signed that petition; further, that some of the appellants voted for the bonds in the election held in the new school district No. 41. Even if we should concede

that some of the appellants were estopped by their conduct and failure to act, this concession would not apply to the appellants who did not sign any petition, and who did not participate in the election. We are unable to agree with the respondents in their position as to estoppel.

It is the judgment of this Court that the decree below be, and the same is hereby, reversed, and that the cause be remanded to the Court of Common Pleas of Williamsburg County for such proceedings as are necessary to give the appellants the relief they seek.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.